1   Michael Rapkine (#222811)
        mrapkine@afrct.com
2   ANGLIN, FLEWELLING, RASMUSSEN,
        CAMPBELL & TRYTTEN LLP
3   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
4   Tel: (626) 535-1900 | Fax: (626) 577-7764

5   Attorneys for Defendant
    WELLS FARGO BANK, N.A.

6

7

8                    UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11  BARBARA BEST-SANTOS,                    CASE NO.: 3:15-CV-02323-MEJ

12                     Plaintiff,           [The Hon. Maria-Elena James]

13          v.
                                            **DEFENDANT WELLS FARGO'S NOTICE**
14  WELLS FARGO BANK, N.A., WELLS           **OF MOTION AND MOTION TO DISMISS**
    FARGO HOME MORTGAGE; NBS                **THE COMPLAINT; MEMORANDUM OF**
15  DEFAULT SERVICES, LLC; and Does 1       **POINTS AND AUTHORITIES**
    through 20, inclusive,
16                                          [*Filed with Request for Judicial Notice*]
                       Defendants.
17

18

19                                          Date:    August 6, 2015
                                            Time:    10:00 a.m.
20                                          Ctrm:    B (15th Floor)

21

22  TO PLAINTIFF AND HER COUNSEL OF RECORD:

23          PLEASE TAKE NOTICE that on August 6, 2015 at 10:00 a.m. in courtroom B of the

24  above-entitled Court, located 450 Golden Gate Avenue, San Francisco, California, defendant

25  Wells Fargo Bank, N.A. ("Wells Fargo") will move to dismiss all ten claims in the complaint,

26  pursuant to FRCP 12(b)(6).

27  / / /

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Grounds for the motion, brought pursuant to FRCP 12(b)(6), are as follows:

2    **1.    First, Second, and Third Claims: Violation of Civil Code §§ 2923.55, 2923.7,**

3    **and 2924.9**

4    Plaintiff fails to state a claim under Civil Code §§ 2923.55, 2923.7, or 2924.9 because

5    plaintiff was not the party to the underlying loan contract; rather, her former husband obtained

6    the loan as the "borrower."  The definitional section of the California Homeowners' Bill of

7    Rights (Civil Code § 2920.5) makes it abundantly clear that plaintiff therefore lacks "statutory

8    standing" to assert a claim under these Civil Code provisions.

9    **2.    Fourth Claim: Violation of Civil Code § 2924.17**

10   Plaintiff fails to state a claim under Civil Code § 2924.17 because the pleadings do not

11   sufficiently allege that any information listed in the recorded notice of default was "false."

12   **3.    Fifth Claim: Negligence**

13   Plaintiff fails to state a claim for negligence because:  (i) Wells Fargo did not owe a duty

14   of care to plaintiff; and (ii) the negligence allegations are merely a "dressed-up" contract claim.

15   **4.    Sixth Claim: Violation of Business & Professions Code Section 17200, et seq.**

16   Plaintiff fails to state a claim for unfair competition because:  (i) this claim is entirely

17   derivative in nature, predicated on plaintiff's faulty HBOR and common law claims; and (ii) the

18   complaint sets forth alleged acts which are not unlawful, unfair, or fraudulent.

19   **5.    Seventh Claim: Breach of Contract**

20   Plaintiff fails to state a claim for breach of contract because:  (i) the pleadings concede

21   that at the time plaintiff acquired legal title to the property, the loan was already delinquent; and

22   (ii) even assuming that plaintiff is a third party beneficiary to the loan contract at issue, the

23   complaint does not and cannot cite provision(s) of the 2005 loan contract that Wells Fargo

24   supposedly violated.

25   **6.    Eighth Claim: Breach of the Implied Covenant of Good Faith and Fair**

26   **Dealing**

27   Plaintiff fails to state an implied covenant claim because:  (i) the pleadings concede that

28   at the time plaintiff acquired legal title to the property, the loan was already delinquent; (ii) even

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  assuming that plaintiff is a third party beneficiary to the loan contract, the complaint does not

2  and cannot cite provision(s) of the 2005 loan contract that Wells Fargo supposedly violated; and

3  (iii) the covenant of good faith and fair dealing cannot be used to impose additional duties on the

4  parties beyond those that expressly appear in the contract.

5  **7.** **Ninth Claim: Fraud (Intentional Misrepresentation)**

6  Plaintiff fails to state a claim for fraud because:  (i) the pleadings do not sufficiently

7  allege a misrepresentation by a Wells Fargo employee; and (ii) plaintiff also has not adequately

8  alleged the elements of justifiable reliance or resulting damages.

9  **8.** **Tenth Claim: Negligent Misrepresentation**

10  Plaintiff fails to state a claim for negligent misrepresentation because:  (i) Wells Fargo

11  did not owe a duty of care to plaintiff; (ii) Wells Fargo did not make a misrepresentation; and

12  (iii) as with the causes of action for negligence and unfair competition, this claim should be

13  dismissed as surplussage, for it mirrors plaintiff's contract claims.

14  The motion to dismiss is based on this notice, the memorandum of points and authorities,

15  the complaint, the accompanying request for judicial notice, and on Wells Fargo's argument at

16  the hearing.

17

18  Respectfully submitted,

19  Dated:  May 29, 2015  ANGLIN, FLEWELLING, RASMUSSEN,
    CAMPBELL & TRYTTEN LLP

20

21  By:   */s/ Michael Rapkine*

22  Michael Rapkine
    mrapkine@afrct.com

23  Attorneys for Defendant
    WELLS FARGO BANK, N.A.

24

25

26

27

28

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

1.    INTRODUCTION ...................................................................................................... 1

2.    SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE
      FACTS ........................................................................................................................ 1

3.    PLAINTIFF DOES NOT HAVE "STATUTORY STANDING" TO ASSERT
      CLAIMS UNDER THE CALIFORNIA HOMEOWNERS' BILL OF
      RIGHTS ...................................................................................................................... 4

4.    THE CLAIM UNDER CIVIL CODE § 2924.17 IS LIKEWISE DEFECTIVE .............. 6

5.    PLAINTIFF CANNOT MAINTAIN A BREACH OF CONTRACT CLAIM ................ 8

6.    THE IMPLIED COVENANT CLAIM IS LIKEWISE DEFICIENT .............................. 9

7.    THE NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW ................................. 10

      A.    Wells Fargo Does Not Owe Plaintiff A Duty of Care ........................................ 10

      B.    A Litigant Cannot Manufacture A Tort From A Contract Claim ....................... 14

8.    THE FRAUD CLAIM IS RIDDLED WITH DEFECTS ............................................... 15

9.    THE CLAIM FOR NEGLIGENT MISREPRESENTATION IS SIMILARLY
      PLAGUED WITH SEVERE SHORTCOMINGS ......................................................... 17

10.   THE UCL CLAIM IS CONCLUSORY AND MERITLESS ......................................... 17

11.   CONCLUSION ......................................................................................................... 19

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Armstrong v. Chevy Chase Bank, FSB,*
2012 U.S. Dist. LEXIS 144125, *9-13 (N.D. Cal. Oct. 3, 2012) .......................................11

5

*Carbajal v. Wells Fargo Bank, N.A.,*
6
2015 U.S. Dist. LEXIS 47918, *9-16 (C.D. Apr. 10, 2015)...........................................12, 13

7

*Ennis v. Mortgage Tree Lending, Inc.,*
2009 U.S. Dist. LEXIS 101255, *12 (E.D. Cal. Oct. 30, 2009, Burrell, J.) .......................15

8

*Gilmore v. Am. Mortg. Network, Inc.,*
9
2012 U.S. Dist. LEXIS 176194, *36 (C.D. Cal. Dec. 10, 2012) .......................................16

10

*Hosseini v. Wells Fargo Bank, N.A.,*
11
2013 U.S. Dist. LEXIS 113583, *15 (N.D. Cal. Aug. 9, 2013)............................................6

12

*Kelomar, Inc. v. Kulow,*
2009 U.S. Dist. LEXIS 106786, *4-7 (S.D. Cal. Nov. 12, 2009,
13
Moskowitz, J.).................................................................................................................15

14

*Lawrence v. Aurora Loan Servs. LLC,*
15
2010 U.S. Dist. LEXIS 5373, *25-26 (E.D. Cal. Jan. 25, 2010) .......................................11

16

*Lexmark Intern., Inc. v. Static Control Components, Inc.,*
134 S. Ct. 1377 (2014)........................................................................................................4

17

*Lujan v. Defenders of Wildlife,*
18
504 U.S. 555 (1992)............................................................................................................4

19

*Morgan v. U.S. Bank Nat'l Ass'n,*
2013 U.S. Dist. LEXIS 25586, *10 (N.D. Cal. Feb. 25, 2013) .........................................11

20

*Reyes v. Wells Fargo Bank, N.A.,*
21
2011 U.S. Dist. LEXIS 2235, *34 (N.D. Cal. Jan. 3, 2011) ...............................................9

22

*Rosell v. Wells Fargo Bank, N.A.,*
23
2014 U.S. Dist. LEXIS 113855, *15-16 (N.D. Cal. Aug. 15, 2014) ..................................18

24

*Salcido v. Vericrest Financial & Summit Mgmt. Co., LLC,*
2013 U.S. Dist. LEXIS 158460, *7-8 (N.D. Cal. Nov. 4, 2013) .....................................5, 6

25

*Settle v. World Savings Bank, FSB,*
26
2012 U.S. Dist. LEXIS 4215, *24 (C.D. Cal. Jan. 11, 2012) ............................................11

27

*Shoop v. Deutsche Bank Nat'l Trust Co.,*
28
2010 U.S. Dist. LEXIS 64153, *24 (E.D. Cal. June 28, 2010, O'Neill, J.)........................15

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Steel Co. v. Citizens for a Better Environment,*
   523 U.S. 83 (1998)..................................................................................................4

*Trinity Hotel Inv., LLC v. Sunstone OP Props., LLC,*
   2009 U.S. Dist. LEXIS 13692 (C.D. Cal. Feb. 5, 2009)........................................9

**STATE CASES**

*Aas v. Superior Court,*
   24 Cal. 4th 627 (2000) ....................................................................................15, 18

*Alvarez v. BAC Home Loans Servicing,*
   228 Cal. App. 4th 941 (2014) ..............................................................................12

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal. 4th 503 (1994) ..........................................................................................14

*Cadlo v. Owens-Illinois, Inc.,*
   125 Cal. App. 4th 513 (2004) ..............................................................................16

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
   222 Cal. App. 3d 1371 (1990) ..............................................................................8

*Carma Developers, Inc. v. Marathon Development Calif., Inc.,*
   2 Cal. 4th 342 (1992) ............................................................................................9

*Cicone v. URS Corp.,*
   183 Cal. App. 3d 194 (1986) ..............................................................................17

*Conrad v. Bank of America,*
   45 Cal. App. 4th 133 (1996) ................................................................................16

*Fields v. Napa Milling Co.,*
   164 Cal. App. 2d 442 (1958) ................................................................................16

*Guz v. Bechtel National, Inc.,*
   24 Cal. 4th 317 (2000) ..........................................................................................9

*Jolley v Chase Home Finance, LLC,*
   213 Cal. App. 4th 872 (2013) ..............................................................................12

*Khoury v. Maly's of California, Inc.,*
   14 Cal. App. 4th 612 (1993) ................................................................................18

*Korea Supply Company v. Lockheed Martin Corporation,*
   29 Cal. 4th 1134 (2003) ......................................................................................17

*LiMandri v. Judkins,*
   52 Cal. App. 4th 326 (1997) ................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

iii

*Lueras v. BAC Home Loans Servicing, LP*,
  221 Cal. App. 4th 49 (2013) ...............................................................11, 12, 13

*McAllister v. Clement*,
  75 Cal. 182 (1888) .................................................................................16

*Nymark v. Hart Federal Savings & Loan Ass'n*,
  231 Cal. App. 3d 1089 (1991) ...................................................11, 13, 14

*Spinks v. Equity Residential Briarwood Apartments*,
  171 Cal. App. 4th 1004 (2009) ...............................................................9

*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*,
  70 Cal. App. 4th 55 (1999) ...................................................................10

*Wagner v. Benson*,
  101 Cal. App. 3d 27 (1980) ...................................................................13

**STATE STATUTES**

Cal. Civ. Code § 2920.5 .............................................................................4, 5

Cal. Civ. Code § 2920.5(c)(1) ...................................................................5, 6

Cal. Civ. Code §§ 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10,
  2924.11, 2924.18, and 2924.19 ..............................................................5

Cal. Civ. Code § 2923.5 .............................................................................5, 6

Cal. Civ. Code § 2923.7 ...............................................................................18

Cal. Civ. Code § 2923.7(a) ...........................................................................7

Cal. Civ. Code § 2923.9 ...............................................................................18

Cal. Civ. Code § 2923.55 ...............................................................................8

Cal. Civ. Code §§ 2923.55, 2923.7 and 2924.9 ..........................................6

Cal. Civ. Code §§ 2923.55, 2923.7, 2924.9, and 2924.17 .................1, 3, 4

Cal. Civ. Code § 2923.55(f) ...........................................................................7

Cal. Civ. Code § 2924.17 ......................................................................4, 6, 7

Cal. Civ. Code § 2924.18 ...............................................................................6

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

This action arises from a home loan that plaintiff's ex-husband obtained from Wells Fargo's predecessor in 2005, and the non-judicial foreclosure that was recently initiated due to the default on this mortgage.  In an attempt to enjoin the foreclosure process and to recover various damages, plaintiff asserts an assortment of claims under the California Homeowners' Bill of Rights (the "HBOR"), along with various torts and contract claims.

Specifically, plaintiff contends that Wells Fargo violated the following HBOR provisions – Civil Code §§  2923.55, 2923.7, 2924.9, and 2924.17.  The complaint also asserts claims for breach of contract, breach of the implied covenant, negligence, unfair competition, fraud, and negligent misrepresentation, all predicated on the theory that following plaintiff's divorce, plaintiff had the right to assume the loan and to be reviewed for a potential loan modification.

For several critical reasons, plaintiff cannot state a viable claim against Wells Fargo.  First, the HBOR claims are fatally defective because plaintiff does not qualify as the "borrower" under this statutory scheme.  Furthermore, the common law claims fail because the pleadings are devoid of facts that would establish a causal nexus between Wells Fargo's purported conduct and plaintiff's damages.

Moreover, plaintiff's claims for negligence, unfair competition, negligent misrepresentation, and fraud mirror the contract claims.  Because a litigant cannot manufacture a tort from a contract claim, these causes of action should be disregarded as mere surplussage.

Plaintiff's claims are also plagued by independent shortcomings, as detailed in this motion.  Accordingly, Wells Fargo requests that its motion be granted without leave to amend.

## 2.   SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE FACTS

On or around July 15, 2005, plaintiff's husband at the time (Jackson Santos) obtained a $525,000 home loan from Wells Fargo's predecessor, World Savings Bank, FSB.[1] (Comp. ¶¶ 22-

---

[1]   The original lender (World Savings Bank, FSB) changed its name to "Wachovia Mortgage, FSB" and subsequently merged into "Wells Fargo Bank, N.A." on November 1, 2009.  Attached to the accompanying Request for Judicial Notice as Exhibits A through E are true and correct copies of records issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC, which acknowledge this corporate transition.

23).  The loan was memorialized in a promissory note and secured by a deed of trust recorded against 24 Sweet Road, Lafayette, California. (Comp. ¶¶ 2, 8, 20, 22-23).  A true and correct copy of the recorded deed of trust signed by Mr. Santos is attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit F.

In January 2012, plaintiff left Jackson Santos, due to his substance abuse problem and increasingly violent behavior. (Comp. ¶ 25).  Mr. Santos continued to reside in the subject property, while "Plaintiff and her son were forced to move in with Plaintiff's mother." (Comp. ¶ 26).

In connection with the divorce proceedings, the Contra Costa County Sherriff's Department forced Mr. Santos to vacate the subject property in late 2012, thereby allowing plaintiff and her son to move back home. (Comp. ¶ 28).  The complaint stresses that "Plaintiff continued to make payments on the subject loan as best as she could throughout the divorce proceedings, although she missed a few payments here and there." (Comp. ¶ 29).[2]

On April 29, 2013, the Contra Costa Superior Court issued a judgment dissolving the marriage between plaintiff and Jackson Santos. (Comp. ¶ 31).  As part of this judgment, the Superior Court ordered that plaintiff would receive the subject property, subject to existing liens and encumbrances. (Comp. ¶ 32).

Disregarding the order and judgment of the Superior Court, "Mr. Santos refused to execute an Interspousal Transfer Deed conveying title [of the property] to Plaintiff." (Comp. ¶ 35).  In response, "the Court issued the Deed itself, which conveyed title in full to the Plaintiff in June 2013." *Id*.

Plaintiff adds that she continued making monthly loan payments to Wells Fargo following this transfer of legal title. (Comp. ¶ 40).  It is further alleged that because plaintiff was not the borrower listed on the deed of trust, "Plaintiff had no access to loan payment information and was not sent any mortgage statements or any other correspondence regarding the loan."

---

[2]    In addition to the concession that plaintiff occasionally missed mortgage payments, the complaint also concedes that: "there were [existing] late fees and other charges due on the loan when [plaintiff] took it over." (Comp. ¶ 44).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  (Comp. ¶ 43) (see also, Comp. ¶ 42:  "The Plaintiff begged Wells Fargo to speak with her

2  regarding the loan and to permit her to assume the loan, but Wells Fargo refused.").

3        On November 19, 2014, Wells Fargo had its trustee record a notice of default with

4  respect to the loan in the Contra Costa County Recorder's Office. (RJN, Exh. G; Comp. ¶ 46).

5  As reflected in this notice, the loan arrearage stood at $23,241.18 at the time. (RJN, Exh. G at

6  p.1).  Page two of the notice reflects that: "payment [had] not been made of: Installments of

7  Principal and Interest which became due on 06/01/2014, plus impounds and/or advances together

8  with late charges and all subsequent installments . . .") (RJN, Exh. G at p.2).

9        On March 20, 2015, a notice of trustee's sale was recorded with respect to the property.

10  (RJN, Exh. H; Comp. ¶ 57).  Plaintiff now brings this action, asserting a number of common law

11  claims and statutory violations.  According to plaintiff, Wells Fargo not only refuses to allow her

12  to assume the loan – plaintiff does not receive "statements, notices or communications from

13  Wells Fargo, as they [are] sending everything to JACKSON SANTOS with whom Plaintiff [is]

14  in a very contentious relationship." (Comp. ¶ 48).[3]

15        The complaint goes on to discuss various communications that plaintiff had with two

16  Wells Fargo representatives in late 2014 and 2015 – these individuals explained that Wells Fargo

17  could not evaluate plaintiff for loss mitigation options, due to plaintiff's status as a non-

18  borrower. (Comp. ¶¶ 53-59).  Plaintiff adds that she "is a very good candidate for a loan

19  modification, repayment plan, or forbearance agreement . . . as her gross income is

20  approximately $9,200." (Comp. ¶ 62).

21        Based on the foregoing, the complaint asserts the following claims against Wells Fargo:

22  violation of Civil Code §§ 2923.55, 2923.7, 2924.9 and 2924.17; negligence; unfair competition;

23  breach of contract; breach of the implied covenant; fraud; and negligent misrepresentation.  As

24  briefed below, not a single claim has merit.

25  / / /

26

27     [3]   Although the Court must treat this allegation as true at this stage of the litigation, plaintiff's assertion that Wells Fargo does not send her any loan statements or notices is difficult to believe. After all, plaintiff resides in the subject property and her ex-husband is in jail. (Comp. ¶¶ 28, 49).

28

**3.** **PLAINTIFF DOES NOT HAVE "STATUTORY STANDING" TO ASSERT**
**CLAIMS UNDER THE CALIFORNIA HOMEOWNERS' BILL OF RIGHTS**

The first four claims in the complaint are brought under the California Homeowners' Bill of Rights (the "HBOR") – specifically, Civil Code §§ 2923.55, 2923.7, 2924.9, and 2924.17. (Comp. ¶¶ 70-84). There is no need to delve into the nuances of each statutory provision, for excluding Civil Code § 2924.17, each claim suffers from one fatal shortcoming. Plaintiff is not the borrower with respect to the loan in question, and she is therefore precluded from maintaining these claims under the HBOR.

To show Article III standing, a plaintiff must demonstrate an injury-in-fact that is fairly traceable to the defendant's conduct and one that a court may adequately redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the present case, plaintiff alleges that she took legal title to the subject property after her divorce, and that Wells Fargo has initiated improper foreclosure proceedings with respect to the property. (e.g., Comp. ¶¶ 31-46). Although Wells Fargo reserves it right to dispute plaintiff's Article III standing later in this litigation, it chooses not to challenge plaintiff's standing to bring common law claims within this 12(b)(6) motion.

However, Wells Fargo *does* challenge plaintiff's right to bring claims under the HBOR. For statutory claims, a plaintiff must also demonstrate that she is authorized to bring suit under the particular statute. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 (2014); see also, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 (1998) ("The latter question is an issue of *statutory* standing. It has nothing to do with whether there is a case or controversy under Article III.") (italics in original).

Here, plaintiff is not a "borrower" within the meaning of the HBOR, and therefore plaintiff lacks standing to enforce the Civil Code provisions referenced in her complaint. After all, the definitional section of the HBOR (Civil Code § 2920.5) states as follows:

> Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any

1    federal, state, or proprietary foreclosure prevention alternative
     program offered by, or through, his or her mortgage servicer.

2    Civil Code § 2920.5(c)(1).

3         As clearly indicated in the deed of trust for the loan at issue, "Jackson Santos, a Married

4    Man" is the sole "borrower" and "trustor." (RJN, Exh. F at pp. 1-2).  In an addendum to the deed

5    of trust, plaintiff even signed the below provision, applicable to a non-borrower spouse:

6         **BORROWER(S)' SPOUSE(S):** The undersigned hereby joins in
          this Security Instrument for the sole purpose of encumbering,
7         subordinating, conveying and/or waiving any current or potential
          interest in the Property.  <u>By signing below, the undersigned</u>
8         <u>encumbers, subordinates, conveys and/or waives any and all rights,</u>
          <u>interests or claims in the Property,</u> including but not limited to
9         homestead, dower, marital, or joint-occupancy rights.  No personal
          liability under the Note is hereby incurred by the undersigned
10        joining spouse.

11   (RJN, Exh. F at p.16) (bold in original; underlined added).

12        Put quite simply, Jackson Santos is the person who borrowed the money and is the only

13   trustor listed on the deed of trust.  Accordingly, Mr. Santos is the only person possessing any

14   rights created Civil Code § 2920.5.  Because plaintiff is not the borrower, she does not have

15   standing to pursue these HBOR claims.

16        An instructive case on this issue is *Salcido v. Vericrest Financial & Summit Mgmt. Co.,*

17   *LLC*, 2013 U.S. Dist. LEXIS 158460 (N.D. Cal. Nov. 4, 2013).  In *Salcido*, the borrower listed

18   on the deed of trust was "Sandra Vasquez, an unmarried woman"; however, Ms. Vasquez

19   subsequently executed a grant deed in which she gifted to German Salcido an undivided interest

20   in the property in joint tenancy.  Mr. Salcido then assumed responsibility for making monthly

21   mortgage payments, and beginning in late 2011, Salcido began to communicate with his lender

22   concerning a potential loan modification.

23        When the lender recorded a notice of default, Mr. Salcido brought suit, asserting a

24   mixture of HBOR and common law claims.  In rejecting the HBOR claim under Civil Code

25   § 2923.5, the district court cited Civil Code § 2920.5 and explained that:  "The fundamental

26   flaw…is that Plaintiff is not a 'borrower' within the meaning of the statute."  *Salcido*, 2013 U.S.

27   Dist. LEXIS at *7.  Accordingly, the *Salcido* court dismissed the Section 2923.5 claim with

28   prejudice, adding that:  "The fact that Vasquez subsequently transferred an interest in the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Property as a 'gift' to Plaintiff does not alter the fact that only Vasquez is the 'Borrower' for purposes of Section 2923.5." *Id*. at *8.

Another case on point is *Hosseini v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 113583 (N.D. Cal. Aug. 9, 2013). In *Hosseini*, the son-in-law of the two borrowers initiated a wrongful foreclosure lawsuit, because he was the individual dealing with Wells Fargo in an attempt to secure a loan modification. The district court granted Wells Fargo's motion to dismiss, holding that plaintiff did not qualify as a "borrower" under the definitional section of the HBOR, Civil Code § 2920.5(c)(1). *Hosseini*, 2013 U.S. Dist. LEXIS at *15 ("[Plaintiff's] allegation is contradicted by the judicially-noticeable deed of trust. . . .Therefore, as Plaintiff Hosseini is neither a 'mortgagor nor trustor,' he is not a borrower under [the HBOR] and may not bring an action pursuant to *section 2924.18*.").

On a final note, the complaint before this Court contains the argument that under operation of law, plaintiff automatically became the new borrower/trustor pursuant to the divorce decree of the Superior Court. (Comp. ¶¶ 36-37: "By virtue of the Court's order . . . the Plaintiff received title to the property and assumed the Subject Loan. In addition, the Plaintiff became the trustor under the Deed of Trust by virtue of the Court's orders."). However, pursuant to Section 23 of the deed of trust, the "Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender." (RJN, Exh. F at p.10). In other words, the lender must expressly consent in writing for an individual other than Jackson Santos to be considered the "borrower" and "trustor", thereby allowing this person to invoke various rights afforded to a borrower under California law, including those under the HBOR.

For this reason alone, the first through third claims in the complaint (alleged violations of Civil Code §§ 2923.55, 2923.7 and 2924.9) should be dismissed with prejudice.

**4.    THE CLAIM UNDER CIVIL CODE § 2924.17 IS LIKEWISE DEFECTIVE**

Unlike the first three claims in this action, plaintiff's fourth cause of action – an alleged violation of Civil Code § 2924.17 is not barred due to plaintiff's lack of statutory standing. Civil Code § 2920.5(c)(1) lists a number of HBOR provisions that require the plaintiff to be the "borrower"; however, Section 2924.17 does not appear on this list.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

That being said, plaintiff still does not state a viable claim under Section 2924.17.  This Section, also known as the "robo-signing" provision of the HBOR, provides that certain foreclosure documents "shall be accurate and complete and supported by competent and reliable evidence." Civil Code § 2923.7(a).  In the present case, plaintiff alleges that the "declaration of compliance" attached to the recorded notice of default "is false because Wells Fargo refused to speak with the Plaintiff regarding loss mitigation options." (Comp. ¶ 84).  Plaintiff further alleges that the declaration is false because the default was supposedly precipitated "due to Wells Fargo's failure to provide her with accurate information regarding the loan." *Id*.  However, inspection of the notice of default and allegations in the complaint eviscerate plaintiff's claim.

First, the notice of default identifies Jackson Santos as the "borrower" and contains a declaration, signed by a Vice President of Loan Documentation at Wells Fargo (Karina Howze) that:  "The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'  Thirty (30) days, or more, have passed since these due diligence efforts were satisfied." (RJN, Exh. G at p.4).

Plaintiff does not dispute Wells Fargo's due diligence attempts with respect to Jackson Santos, who is the only "borrower" for the purposes of the HBOR, as explained in Section 3 of this motion.  In other words, plaintiff's allegation that the Wells Fargo declaration was false concerning attempts to contact the "borrower" has no merit.

Equally important, the allegation that the subject loan is not in true "default" is undermined by concessions within the pleadings.  A portion of the complaint states that the loan "was only in default due to Wells Fargo's failure to provide [plaintiff] with accurate information regarding the loan" (Comp. ¶ 84), yet the complaint earlier concedes that due to financial pressures, "[plaintiff] missed a few payments here and there" (Comp. ¶¶ 29-30) and that "there were late fees and other charges due on the loan when [plaintiff] took it over." (Comp. ¶ 44).

Put quite simply, Wells Fargo did nothing wrong by initiating a non-judicial foreclosure once the loan was delinquent.  In compliance with Civil Code § 2923.55, Wells Fargo attempted to contact Jackson Santos, the only "borrower" and party to the loan contract, and the bank

subsequently recorded a notice of default that contains a declaration of statutory compliance.

### 5.   PLAINTIFF CANNOT MAINTAIN A BREACH OF CONTRACT CLAIM

In order to sufficiently allege a claim for breach of contract, a plaintiff must plead:  (1) the existence of a contract, (2) that plaintiff performed under the contract or was excused for nonperformance, (3) that defendant breached the contract, and (4) that plaintiff suffered damages as a result of defendant's breach.  *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1388 (1990).

In the present case, plaintiff alleges that "[she] fully performed under the Contract by making payments on the loan for nearly three years." (Comp. ¶ 101).  The complaint goes on to allege that "Wells Fargo breached the Contract by refusing to speak with Plaintiff regarding the loan including providing her timely and accurate information on the amount of her monthly payments." (Comp. ¶ 101) (see also, Comp. ¶ 102:  "By virtue of being a party to the Contract, as well as state and federal guidelines, Wells Fargo was also obligated to discuss loss mitigation options with the Plaintiff. . .").  These allegations are insufficient to state a breach of contract claim for the following critical reasons.

As a threshold matter, plaintiff cannot state a claim even if the Court were to treat her as a third party beneficiary under the loan contract.  After all, the complaint contains admissions that "[plaintiff] missed a few payments here and there" (Comp. ¶ 29) and that "there were late fees and other charges due on the loan when [plaintiff] took it over." (Comp. ¶ 44).  In other words, plaintiff's failure to perform bars prosecution of this cause of action.

Furthermore, the complaint does not cite the provision(s) of the 2005 loan contract that Wells Fargo supposedly violated.  Even assuming that plaintiff has standing to assert a claim for breach of the contract between World Savings and Jackson Santos, she has not alleged sufficient facts to support the contention that under "state and federal guidelines, Wells Fargo was [sic] obligated to discuss loan mitigation options with [her]. . ." (Comp. ¶ 102).  In an earlier portion of the complaint, plaintiff stresses that federal guidelines compel Wells Fargo to evaluate her for a loan modification, yet plaintiff fails to cite a specific statutory provision. (Comp. ¶ 67: "Federal guidelines provide that, in situations where a divorcing spouse receives title vis-à-vis a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   divorce degree, a loan servicer or lender should permit the new owner to assume the loan and to

2   discuss loss mitigation options with the new title holder spouse.").

3          Put quite simply, plaintiff should not be allowed to maintain a contract claim against

4   Wells Fargo.  At best, plaintiff should be permitted to file an amended complaint predicated on a

5   federal statute that compels Wells Fargo to review plaintiff for loss mitigation options.

6          **6.    THE IMPLIED COVENANT CLAIM IS LIKEWISE DEFICIENT**

7          To state a claim for breach of the implied covenant, one must allege:  (1) the existence of

8   a contract; (2) that plaintiff did all, or substantially all, of the significant things the contract

9   required; (3) that the conditions required for the defendant's performance had occurred; (4) that

10  defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and

11  (5) that plaintiff was harmed by the defendant's conduct.  *Trinity Hotel Inv., LLC v. Sunstone OP*

12  *Props., LLC*, 2009 U.S. Dist. LEXIS 13692 (C.D. Cal. Feb. 5, 2009); see also, *Carma*

13  *Developers, Inc. v. Marathon Development Calif., Inc.*, 2 Cal. 4th 342, 371-375 (1992).

14         As with the cause of action for breach of contract, the implied covenant claim is plagued

15  a key shortcoming – the fact that the pleadings contain concessions that a delinquency began to

16  develop on the subject loan sometime in 2012 or 2013. (e.g., Comp. ¶¶ 29, 44).  Because plaintiff

17  cannot credibly allege that the loan is not legitimately in default, the implied covenant claim

18  must necessarily fail.

19         Moreover, an implied covenant claim cannot contradict the express terms of the contract.

20  *Reyes v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 2235, *34 (N.D. Cal. Jan. 3, 2011).

21  *See also*, *Spinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1033-

22  1034 (2009) ("The implied covenant of good faith and fair dealing is limited to assuring

23  compliance with the express terms of the contract . . . .").  The covenant of good faith and fair

24  dealing cannot be invoked to rewrite the express agreement of the parties.  *Guz v. Bechtel*

25  *National, Inc.*, 24 Cal. 4th 317 (2000) ("The covenant thus cannot be endowed with an existence

26  independent of its contractual underpinnings.  . . .  It cannot impose substantive duties or limits

27  on the contracting parties beyond those incorporated in the specific terms of their agreement.");

28  *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 70 (1999) ("Implied

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

covenants are disfavored at law. ...  The courts will not imply a better agreement for parties than they themselves have been satisfied to enter into, or rewrite contracts whenever they operate harshly.")

Plaintiff alleges that Wells Fargo has breached an implied covenant by "refus[ing] to discuss loan modification options" and deciding "to proceed toward foreclosure" (Comp. ¶ 107); however, plaintiff is attempting to use the implied covenant doctrine to rewrite the express terms of the deed of trust.  The trust deed does not obligate the lender to review the borrower (let alone a non-borrower such as plaintiff) for loan modification options – rather, such duties are created by California's foreclosure statutes, i.e., the HBOR.  Furthermore, the deed of trust contains express provisions concerning the lender's right to initiate a non-judicial foreclosure if mortgage payments are missed. (e.g., RJN, Exh. F at, p. 13, Covenant 28: "It will be called a 'Breach of Duty' if . . . [Borrower does] not pay the full amount of each regularly scheduled payment on the date it is due . . . . If there is a Breach of Duty by [Borrower], Lender may exercise the power of sale. . .").  The deed also specifically includes a promise by the borrower to pay "on time, all principal and interest due under the Secured Note and any prepayment and late charges due. . ." (RJN, Exh. F at p.3, Covenant 1).  Plaintiff's attempt to rewrite and override these express provisions is improper.

## 7.   THE NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW

In the fifth cause of action for negligence, it is alleged that Wells Fargo "had a duty to exercise reasonable care in considering Plaintiff's request for loan modification assistance. . ." (Comp. ¶ 86).  It is further alleged that plaintiff has suffered damages "[a]s a result of Wells Fargo's negligence in determining that the Plaintiff did not qualify for a loan modification . . . [and] by virtue of [its] false claim that she could not assume the loan. . ." *Id.*

Such allegations do not give rise to a negligence claim for the following key reasons.  As such, amendment of plaintiff's negligence theory would be futile.

## A.   Wells Fargo Does Not Owe Plaintiff A Duty of Care

As the California Supreme Court explained in *Nymark v. Hart Federal Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991), "as a general rule, a financial institution owes no

duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

With respect to loan servicing allegations, the recent foreclosure crisis has forced courts to routinely examine the issue of whether a duty of care can be imputed to a lender in the context of analyzing foreclosure alternatives, and the vast majority have found that no duty exists.  For example, the district court in *Armstrong v. Chevy Chase Bank, FSB*, 2012 U.S. Dist. LEXIS 144125, *9-13 (N.D. Cal. 2012) explained that a duty of care is not even created when a lender *offers* the borrower a loan modification, because like the original underwriting process, a modification review and approval is simply a renegotiation of the loan terms.  See also, *Morgan v. U.S. Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 25586, *10 (N.D. Cal. 2013) ("This Court agrees . . . a lender undertakes no new duty by offering a loan modification."); *Settle v. World Savings Bank, FSB*, 2012 U.S. Dist. LEXIS 4215, *24 (C.D. Cal. 2012) ("Numerous cases have characterized a loan modification as a traditional money lending activity.").

Another instructive case on whether delinquent borrowers may state a cause of action in the context of the loan servicing process is *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67-68 (2013).  In *Lueras*, the Court of Appeal explained that a lender's obligations "are created solely by the loan documents, statutes, regulations, and relevant [agency] directives and announcements," rather than by case law.  *Lueras*, 221 Cal. App. 4th at 67.  The *Lueras* court went on to explain that absent an affirmative misrepresentation, a lender's actions do not give rise to a negligence claim, because a lender does "not have a duty of care to handle [the borrower's] loan in such a way to prevent foreclosure and forfeiture of [the] property."  *Id.* at 68. After all, a borrower faces the prospect of foreclosure because of their default, not due to the lender's actions in evaluating potential foreclosure alternatives.  See also, *Lawrence v. Aurora Loan Servs. LLC*, 2010 U.S. Dist. LEXIS 5373, *25-26 (E.D. Cal. 2010) ("Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances.").

It should be added that while a split of authority has admittedly emerged on the issue of negligence in the loan servicing context; the minority rule is simply that a duty of care arises in

specific loan servicing scenarios.  The key cases that have found the existence of a duty of care are *Jolley v Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (2013) and *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014); however, these cases are distinguishable from the present action.

First, *Jolley* involved a construction loan, and the Court of Appeal acknowledged that significant differences exist between a commercial construction project and a residential home loan.  *Jolley*, 213 Cal. App. 4th at 901 ("[A construction loan] more readily gives rise to a cause of action for negligence in that contractual disbursements must be made with due care.").  Second, the bank employee in *Jolley* (Andrew North) repeatedly assured the borrower that there was a "high probability" of a loan modification, provided the borrower completed a construction project.  *Id*. at 880-881.  In other words, the lender made affirmative representatives that induced the borrower to spend quite a bit of money.  By contrast, the instant action simply involves a situation in which a non-borrower spouse received legal title to property following a divorce, and this non-borrower now insists that the lender has a statutory duty to review her for a potential loan modification.

As for *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014), this case is distinguishable because the lender used incorrect data to deny applications for a loan modification.  Specifically, the defendant lender used a monthly gross income of $2,554 to reject a modification request, while the plaintiffs' paystubs revealed a monthly gross income of $6,075.  *Alvarez*, 228 Cal. App. 4th at 945.  The plaintiffs alleged that because of this botched loan modification review, they sustained continued harm to their credit and did not pursue other options to cure the default.  *Id*. at 948-949.

In *Carbajal v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 47918, *9-16 (C.D. Apr. 10, 2015), the district court analyzed both *Lueras* and *Alvarez*, and concluded that the reasoning in *Lueras* was far more persuasive.  In granting the bank's motion to dismiss, the *Carbajal* court noted the importance of the threshold question – whether the defendant's purported conduct constituted "conventional arms-length lending activity" or rose to the level of "active participation" in the affairs of the borrower.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5

> The California Supreme Court has not spoken on this issue, and this Court agrees with the reasoning in *Lueras*.  The Court fails to discern how considering an application for the renegotiation of loan terms could fall outside the scope of a lender's "conventional role as a lender of money."  *See Nymark,* 231 Cal. App. 3d at 1096.  In a modification application mishandling case, there is no "active participation" in the borrower's financed enterprise that demonstrates that the lender is acting outside the scope of conventional arms-length lending activity.

6  *Carbajal,* 2015 U.S. Dist. LEXIS at *13.

7          In reaching its conclusion, *Carbajal* cites to *Wagner v. Benson*, 101 Cal. App. 3d 27

8  (1980), a case that involved a more atypical arrangement that nevertheless fell within the scope

9  of "conventional" lender activity.  In *Wagner*, the borrowers obtained a loan to invest in cattle,

10  and pursuant to the loan contract, the lender had the right to monitor business developments and

11  to demand prepayments if the herd-to-loan value reached a certain level.  Eventually, the cattle

12  venture took a disastrous turn when beef prices plummeted, and the borrowers filed a suit

13  alleging, *inter alia*, that the lender had negligently handled the loan transaction.  In rejecting the

14  negligence claim, the Court of Appeal held that "liability to a borrower for negligence arises only

15  when the lender "'actively participates' in the financed enterprise", and "[n]ormal supervision of

16  the enterprise by the lender. . . is not 'active participation.'"  *Wagner*, 101 Cal. App. 3d at 35

17  (citations omitted).  In affirming the trial court judgment with respect to the negligence claim,

18  the *Wagner* court added that "[t]he Bank's limited involvement in the [cattle] enterprise falls far

19  short of the extensive control and shared profits which give rise to liability."  *Id.* at 35.

20          The same rationale applies to the instant action.   Plaintiff describes nothing more than

21  "conventional arms-length lending activity", for Wells Fargo's predecessor originated the home

22  loan and Wells Fargo initiated a non-judicial foreclosure after the loan fell into default.  Even if

23  the Court were to rely on the body of case law that has imputed a duty of care in certain

24  foreclosure scenarios, the complaint is devoid of any facts that would warrant the imposition of

25  such a duty.  After all, there are no allegations that a Wells Fargo employee made an affirmative

26  misrepresentation or committed a blunder that would establish a causal nexus between the

27  purported breach and plaintiff's damages.

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    In light of the foregoing, this Court should affirm the overwhelming body of authority

2  and find that a lender does not owe a duty of care when servicing a loan, including when a bank

3  engages in servicing activities that relate to loss mitigation options.  It should be added that the

4  balancing test articulated *Nymark* strongly disfavors the imposition of such a duty.[4]  After all, a

5  non-judicial foreclosure was initiated in the present case because plaintiff's former husband had

6  accrued "late fees and other charges" (Comp. ¶ 44), and because plaintiff "missed a few

7  payments here and there." (Comp. ¶ 29).  Furthermore, given that plaintiff is not a party to the

8  loan contract or a borrower as defined by California's statutory framework, Wells Fargo did not

9  have an obligation to review plaintiff for potential loss mitigation options.  As for public policy

10 considerations, if a duty of care were extended to the loss mitigation review process, two obvious

11 by-products would emerge:  (i) lenders would increasingly refrain from participating in loss

12 mitigation programs; and (ii) unqualified individuals would apply for a foreclosure alternative

13 and then bring a lawsuit when rejected.

14 **B.    A Litigant Cannot Manufacture A Tort From A Contract Claim**

15    The negligence claim mirrors the contract-based claims – after all, both are premised on

16 the contention that Wells Fargo review plaintiff for a loan modification and allow her to assume

17 the loan. (*compare* plaintiff's negligence allegations at ¶ 86 with her contract-based allegations at

18 ¶¶ 101-102 and ¶ 107).

19    However, it is well-settled that a litigant cannot recast a contractual allegation as a tort

20 even if a breach was negligent, fraudulent, or willfully malicious.  Without acts that are

21 *independently* tortious, no tort arises from a breach of contract.  *Applied Equipment Corp. v.*

22 *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515-516 (1994).

23    In rejecting an effort to convert a breach of contract claim into one for tort, the California

24 Supreme Court in *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) explained:

25 _____

26 [4]    This balancing test evaluates six factors: the extent to which the transaction affects the
    borrower, the foreseeability of harm, the degree of certainty that the borrower will suffer injury,
27 the connection between the lender's conduct and potential injury, the moral blame attached to the
    lender's conduct, and the public policy against preventing future harm.  *Nymark, supra*, 231 Cal.
28 App. 3d at 1098.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

> A person may not ordinarily recover in tort for breach of duties that merely restate contractual obligations.  Instead, "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."

Ample case law supports the position that plaintiff's tort allegations are mere surplussage and should be disregarded.  An instructive case is *Shoop v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 64153 (E.D. Cal. June 28, 2010), in which the borrower brought various claims against the foreclosing lender, including one for intentional infliction of emotional distress.  In dismissing the emotional distress claim, the court emphasized that:  "the complaint 'presents a case founded on contract' and that the parties have a limited 'contractual relationship created when the Note and Deed of Trust' were executed by Ms. Shoop.  The contractual relationship bars the complaint's tort claims."  *Shoop,* 2010 U.S. Dist. LEXIS at *24; See also, *Ennis v. Mortgage Tree Lending, Inc.*, 2009 U.S. Dist. LEXIS 101255, *12 (E.D. Cal. Oct. 30, 2009) (tortious interference claim dismissed because plaintiffs cannot cast their contract allegations as a tort); *Kelomar, Inc. v. Kulow*, 2009 U.S. Dist. LEXIS 106786, *4-7 (S.D. Cal. Nov. 12, 2009) (in dismissing a negligence claim, the court explained that "conduct constituting a breach of contract is deemed tortious only when it also violates a duty independent of the contract . . .").

In light of the foregoing, the negligence claim "merely restate[s] contractual obligations" and is not actionable.  *Aas, supra*, 24 Cal. 4th at 643.

## 8.    THE FRAUD CLAIM IS RIDDLED WITH DEFECTS

Moving on to the ninth claim for "intentional misrepresentation," the complaint alleges that two Wells Fargo employees, "Ms. Kathy Ostrander and Mr. Cory Keazer, represented to Plaintiff in the spring of 2015 that they did not have [authority] to speak with the Plaintiff regarding the subject loan because her name was not on the original loan." (Comp. ¶ 111).  Plaintiff adds that "[she] would have never fallen into default on the loan if Wells Fargo had not misrepresented that it could not speak with her regarding the loan." *Id*.

Such allegations are defective for several important reasons.  First, the purported representation that bank employees could only speak with Jackson Santos falls well short of an

1   intentional misrepresentation, especially in light of the fact that plaintiff is not the "borrower"

2   under the HBOR and is not a party to the loan contract.  As for the allegation that Wells Fargo's

3   actions put plaintiff in default, this is undermined by allegations earlier in the complaint. (e.g.,

4   Comp. ¶ 29:  Plaintiff "missed a few payments here and there."; see also, Comp. ¶ 44).

5        Equally important, plaintiff has not adequately alleged the elements of reliance or

6   damages.  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) explained that "the

7   mere assertion of 'reliance' is insufficient."  See also, *Gilmore v. Am. Mortg. Network, Inc.*, 2012

8   U.S. Dist. LEXIS 176194, *36 (C.D. Cal. Dec. 10, 2012) (a plaintiff must allege specific facts

9   that support an assert of detrimental reliance). Here, the complaint simply alleges that:  "Plaintiff

10  reasonably relied on Wells Fargo's representations because Wells Fargo is a national

11  servicer. . ." (Comp. ¶ 113).

12       Closely related to this point, plaintiff does not sufficiently allege that she has suffered

13  damages as a result of Wells Fargo's purported conduct.  After all, plaintiff acknowledges that

14  she missed some monthly payments and that her former husband allowed various late fees to

15  accrue. (Comp. ¶¶ 29, 44).  As for the argument that Wells Fargo is required to review plaintiff

16  for a loan modification, there is no law that compels a lender to provide a modification.

17  Accordingly, it is difficult to understand how Wells Fargo's loan servicing procedures resulted in

18  actual harm to plaintiff, even assuming that plaintiff had the right to be evaluated for a potential

19  modification.

20       Indeed, the law is settled that without damages, a plaintiff simply has no remedy and

21  without a remedy, there is no cause of action.  *McAllister v. Clement*, 75 Cal. 182, 184 (1888)

22  ("But it is clear that no action will lie to recover damages if no damages have been sustained.");

23  see also, *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 159 (1996) ("Misrepresentation,

24  even maliciously committed, does not support a cause of action unless the plaintiff suffered

25  consequential damages"); *Fields v. Napa Milling Co*., 164 Cal. App. 2d 442, 448 (1958) ("a

26  wrong without damage does not constitute a cause of action for damages . . .").  On this basis

27  alone, the fraud claim must necessarily fail.

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**9.    THE CLAIM FOR NEGLIGENT MISREPRESENTATION IS SIMILARLY PLAGUED WITH SEVERE SHORTCOMINGS**

With regard to the tenth cause of action, it is alleged that "Wells Fargo repeatedly told Plaintiff that they would not honor [its] contractual obligations to discuss the terms of the loan, including payment information and loss mitigation options, and instead said that [the contract] did not bind them because Plaintiff was not the original borrower on the loan." (Comp. ¶ 117). The complaint adds that "Wells Fargo was obligated to permit Plaintiff to assume the loan, pursuant to state and federal guidelines." *Id.*

As with the negligence claim, this cause of action suffers from two critical flaws. First, case law is clear that the tort of negligent misrepresentation requires the defendant to owe the plaintiff a duty of care. See e.g., *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 349 (1997) (a plaintiff's "inability to plead a duty of care on the part of [the defendant] precludes his maintenance of a cause of action on any negligence theory."); *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 207-211 (1986) (a duty of care is necessary to proceed with a claim of negligent misrepresentation). This is a death knell to this cause of action, for as discussed at length in Section 7 above, a lender does not owe a duty of care with respect to conventional loan servicing activities.

Here, the pleadings fail to characterize Wells Fargo as anything but a conventional lender. On this basis alone, the claim for negligent misrepresentation necessarily fails.

Equally important, this claim (Comp. ¶¶ 116-117) is duplicative of plaintiff's contract-based claims. (Comp. ¶¶ 101-102 and 107). As briefed in the analysis of the negligence claim, a litigant cannot recast a contract claim as a tort. Because this claim for negligent misrepresentation is simply a "dressed-up" contract claim, it should be disregarded as mere surplussage.

**10.   THE UCL CLAIM IS CONCLUSORY AND MERITLESS**

As a preliminary matter, a UCL claim must state with reasonable particularity the facts showing unlawful, unfair, or fraudulent business acts on the part of the defendant. *Korea Supply Company v. Lockheed Martin Corporation*, 29 Cal. 4th 1134, 1143 (2003); *Khoury v. Maly's of*

*California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  In the present case, plaintiff's UCL cause of action is entirely derivative in nature, consisting of a blend of plaintiff's HBOR and contract-based claims.  Specifically, plaintiff incorporates the prior claims by reference (Comp. ¶ 90) and reiterates that Wells Fargo wrongfully refuses to provide her with loan information or loss mitigation options. (Comp. ¶ 94).  Plaintiff also reiterates that Wells Fargo has purportedly violated various HBOR provisions, including "Civil Code section 2923.7 by [not] providing a single point of contact" and "Civil Code section 2923.9 by [not] sending a written communication that include [certain] information. . ." (Comp. ¶ 94).

Because these allegations are insufficient to state an HBOR or common law claim against Wells Fargo, as briefed throughout this motion, the derivative claim for unfair competition falls by the wayside.  Put quite simply, Wells Fargo had the right under California statutes and the loan contract to initiate a non-judicial foreclosure because the loan is delinquent.  Furthermore, even taking the allegations concerning the bank's refusal to speak to plaintiff at face value, Wells Fargo's protocol in reaching out to Jackson Santos rather than plaintiff does not violate the loan contract or the HBOR.  In other words, Wells Fargo's has not engaged in fraudulent, unlawful, or unfair business practices, and dismissal of the UCL claim is therefore warranted.

Furthermore, to the extent the UCL claim is premised on plaintiff's contract claims, this tort should be dismissed as surplussage.  *Aas, supra*, 24 Cal. 4th at 643 ("A person may not ordinarily recover in tort for breach of duties that merely restate contractual obligations.") (see compilation of additional cases in Section 7 above).

Another illustrative case is *Rosell v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 113855 (N.D. Cal. Aug. 15, 2014), for the borrowers' UCL claim mirrored their claims for breach of contract and breach of the implied covenant.  In granting the bank's 12(b)(6) motion without leave as to the UCL claim, the Rosell court explained that "[a] contract-based UCL claim must have a 'plus' factor to make it independently actionable under the UCL.  Otherwise, every garden-variety breach of contract claim . . . would double as a UCL claim." *Rosell*, 2014 U.S. Dist. LEXIS at *15-16.

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**11.  <u>CONCLUSION</u>**

For all of the foregoing reasons, Wells Fargo requests an order granting its motion to dismiss each claim in the complaint without leave to amend.

Respectfully submitted,

Dated:  May 29, 2015

ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL & TRYTTEN LLP


By:   */s/ Michael Rapkine*
Michael Rapkine
mrapkine@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

| **Served Electronically Via the Court's CM/ECF System** | **Served By Means Other than Electronically Via the Court's CM/ECF System** |
|---|---|
| ***Attorneys for Plaintiff*** | <u>**Courtesy Copy**</u> |
| Nelson W. Goodell, Esq. | ***Attorneys for Defendant*** |
| THE GOODELL LAW FIRM | ***NBS Default Services, LLC*** |
| 5 Third Street, Suite 1100 | |
| San Francisco, CA 94103 | Stephen T. Hicklin, Esq. |
| Tel: 415.495.3950 \| Fax: 415.495.6900 | BUCKLEY MADOLE, P.C. |
| Email: nelson@goodelllawsf.com | 301 E. Ocean Boulevard, Suite 1720 |
| | Long Beach, CA 90802 |
| | Tel / Fax: (562) 983-5363 |
| | Email: stephen.hicklin@buckleymadole.com |

☒ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **May 29, 2015**.

| Barbara Cruz | */s/ Barbara Cruz* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |